UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES | ) |
| | ) |
| v. | ) CRIM. NO. 03-10370-DPW |
| | ) |
| GARY NEWELL, | ) |
| | ) |
| Defendant | ) |

### DEFENDANT NEWELL'S ASSENTED TO REQUEST FOR ADDITIONAL TIME TO FILE EVIDENTIARY MOTIONS

Debra DelVecchio, counsel for Gary Newell, respectfully requests an additional sixty (60) days to file non-discovery motions. The Court has set September 22, 2004 as the filing date for such motions. However, there has been a significant development during the discovery process that requires further investigation and evaluation. The circumstances giving rise to this development are detailed in counsel's supporting affidavit, which is incorporated herein by reference. However, they may be summarized as follows.

In June of 2004, defense counsel and the Government agreed that certain information relating to the training and certification of the drug canine used during the investigation of this case would be produced. These records are important because this drug canine's performance during Mr. Newell's traffic stop

was used by the investigating agents to seize currency from and secure a search warrant directed toward the defendant's truck.

Defense counsel made a number of inquiries to the Government concerning production of these records during the summer of 2004 and was assured that they would be produced. On August 23, 2004, defense counsel learned that the canine's handler Massachusetts State Trooper Mark Reid reported that these documents were destroyed sometime after April, 2004 upon the retirement of the dog. The Government did produce documents purporting to confirm the dog's certification in drug investigations in 1996, 1998, and 2000. However, the search of the defendant's truck took place on or about January 24, 2003.

The destruction of these documents by a government agent has serious implications relating to the admissibility of the evidence seized Mr. Newell's truck. It is particularly troubling since the destruction apparently occurred after defense counsel sent the Government a formal request for the preservation of evidence on April 6, 2004. At a minimum, its elimination prevents defense counsel from conducting independent assessments of the dog's reliability, the sufficiency of his drug detection training, and the veracity of the information about him contained in the search warrant application. This destruction of evidence may, in and of itself, form the basis for, among other things, a suppression motion and hearing pursuant to <u>Franks</u> v. <u>Delaware</u>. It also may support a motion to dismiss for police misconduct.

Defense counsel needs additional time to investigate this matter in order to properly prepare the defendant's motions which may be dispositive of the case. Consequently, defense counsel respectfully requests an additional 60 days to complete her investigation and file her evidentiary motions.

Defense counsel has discussed this motion with AUSA Rachel Hershfang who assents to the motion insofar as it seeks additional time to complete discovery and file motions.

Dated:  September 9, 2004

Respectfully submitted,
Gary Newell,
By his attorney,

_____
Debra A. DelVecchio
B.B.O. No. 542139
DEL VECCHIO & HOUSEMAN
15 Front Street
Salem, MA  01970
(978) 740-5999

## AFFIDAVIT OF COUNSEL

FILED
IN OPEN COURT
2004 SEP 10 P 3: 52
U.S. DISTRICT COURT
DISTRICT OF MASS

Debra A. DelVecchio, being duly sworn, deposes and states that the following is true based upon my information and belief:

1. I was appointed to represent Gary Newell in the above-entitled case in March of 2004.

2. On April 6, 2004, I sent AUSA Rachel Hershfang a letter requesting that all evidence relating to Mr. Newell's case be preserved. (Exhibit A.)

3. On June 10, 2004, I sent AUSA Hershfang a letter formally requesting supplemental discovery concerning, *inter alia*, records relating to Massachusetts State Police drug canine Mako and his handler Trooper Mark Reid. (Exhibit B.)

4. On June 17, 2004, the Court issued its Order setting the filing date for non-discovery motions as September 22, 2004.

5. On June 26, 2004, I spoke with AUSA Hershfang about my supplemental discovery request. We agreed that she would provide me with records relating to the drug canine and then we would discuss the remainder of my discovery requests.

6. On July 23, 2004, I spoke with AUSA Hershfang again about when to expect these records. She indicated that the agents were busy with activities related to the Democratic National Convention but that she would provide the documents in about two weeks.

7. On August 6, 2004, two days before my vacation, I sent AUSA Hershfang a letter recapping the status of discovery discussions. I asked that the promised

documents be delivered by the time I returned from vacation on August 22nd and for her to notify me if this presented any problem. (Exhibit C.)

8. When I arrived at my office on August 23rd, I found two letters from AUSA Hershfang. The first letter dated August 16, 2004 notified me that the drug canine's handler Trooper Mark Reid had informed her that Mako's records had been destroyed after the dog's retirement sometime around April of 2004. (Exhibit D.) The second letter dated August 18, 2004 enclosed Mako's certificates for drug detection of various substances for 1996, 1998, and 2000. (Exhibit E.)

9. During the week of August 23, 2004, I called AUSA Hershfang to discuss the destroyed evidence and my remaining requested discovery items. She indicated that she was leaving for her own vacation on August 27, 2004 and that we would discuss the case further when she returned to work on September 8, 2004.

10. On August 26, 2004, I sent AUSA Hershfang a letter formally renewing my discovery requests, confirming the current status of our discovery discussions, reminding her of the filing deadline for the defendant's non-discovery motions, and urging her to contact me as soon as possible after her vacation. (Exhibit F.)

11. Since I learned that Mako's records were destroyed, I have been investigating the effect of the agent's actions on the defense of Mr. Newell's case as well as exploring alternative sources for the information in question. This investigation, which will include additional conversations with AUSA Hershfang as soon as she is available, will take at least another month.

12. Based upon my review of the current, unexpected state of the case, I need an additional sixty (60) days in which to investigate the circumstances surrounding the destruction of Mako's training records, consider its impact on Mr. Newell's defense, and prepare my motions on his behalf.

13. All of the information contained in my foregoing Request for Additional Time to File Motions is true to the best of my knowledge and belief, and is incorporated into this affidavit as if fully recited here.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 9TH DAY OF SEPTEMBER, 2004.

/s/ Debra A. DelVecchio
Debra A. DelVecchio
B.B.O. No. 542139

EXHIBITS

# DELVECCHIO & HOUSEMAN
### ATTORNEYS AT LAW

The Perry Building
15 Front Street
Salem, Massachusetts 01970

Debra A. DelVecchio
Scott D. Houseman

Telephone (978) 740-5999
Telecopier (978) 740-9434

April 6, 2004

<u>By FAX to (617) 748-3965</u>
<u>& First Class Mail</u>

AUSA Rachel E. Hershfang
United States Attorney's Office
Moakley Federal Court House
One Courthouse Way, 10th Floor
Boston, MA  02110

RE: <u>United States v. Douglas Bannerman et al.</u>
    <u>CRIM. NO.  03-10370-DPW</u>

Dear Ms. Hershfang:

As you know, in late March, I was appointed to represent Gary Newell in the above-captioned case. Thank you for forwarding your letter dated March 15, 2004 advising counsel of the DEA's drug retention policy.

This letter will serve as Mr. Newell's formal request that the DEA forego destruction of any evidence that the Government alleges is attributable to my client, either directly or as relevant conduct, during the pendency of this case to permit inspection and testing. If any portion of the evidence has been destroyed already, please notify me immediately.

Thank you for your cooperation and courtesy.

Very truly yours,

Debra A. DelVecchio

DAD/ss
cc: Mr. Gary Newell
    All Counsel of Record (By First Class Mail)

EXHIBIT A

# DELVECCHIO & HOUSEMAN

ATTORNEYS AT LAW

The Perry Building
15 Front Street
Salem, Massachusetts 01970

Debra A. DelVecchio
Scott D. Houseman

Telephone (978) 740-5999
Telecopier (978) 740-9434

FILED
IN OFFICE
2004 SEP 10 P 3: 52
U.S. DISTRICT COURT
DISTRICT OF MASS.

June 10, 2004

By FAX to (617) 748-3965 (6 Pages w/ Cover)
& First Class Mail

AUSA Rachel E. Hershfang
United States Attorney's Office
Moakley Federal Court House
One Courthouse Way, 10th Floor
Boston, MA 02110

   RE:   United States v. Douglas Bannerman et al.
         CRIM. NO.   03-10370-DPW

Dear Rachel:

   As you know, I represent Gary Newell in the above-captioned case. Pursuant to Fed. R. Crim. P. 12(d)(2), 16(a), Brady v. Maryland, 373 U.S. 83 (1963) and all other applicable rules and statutes, please consider this letter my formal request for supplemental discovery as well as highlight a couple of other issues.

   First, as you will recall, on April 6, 2004, I sent you a letter formally requesting that the tangible items relating to Mr. Newell's criminal case be preserved for my inspection and possible independent testing. (copy enclosed.) In particular, I need to inspect all of the items allegedly seized from my client's truck on or about January 24, 2003, including but not limited to the two Federal Express boxes, all packaging materials, the cooler, the tarp(s), and the currency. Please let me know at your earliest convenience when and where I may inspect these items.

   Second, I understand that the initial motor vehicle stop involving Mr. Newell reportedly was conducted by officers of the Cambridge Police Department working with Drug Enforcement Agency (DEA) agents. Further, the roadside investigation included a search of Mr. Newell's truck by Massachusetts State Police Trooper Mark Reid using a canine unit named Mako. Under these

EXHIBIT B

**DEL VECCHIO & HOUSEMAN**

AUSA Rachel E. Hershfang
RE: Gary Newell
June 10, 2004
Page 2

circumstances, I am requesting that the Government to identify and produce copies of the following:

(1) <u>**Training Records of Police Canine Mako and His Handlers:**</u>

All training records and the actual, un-redacted notations of the activities and performance of the police canine known as Mako and his handler(s) in their daily training activities. More specifically, I am requesting:

- (a) All written standards and score sheets of all certification and re-certification evaluations.

- (b) Certification standards of any entity that certified or re-certified Mako.

- (c) All training evaluations of the handlers of Mako, including the handler identified as Massachusetts State Trooper Mark Reid.

- (d) Identify all documents that define the final response Mako was trained to make upon finding drugs and/or currency.

- (e) All documentation identifying Mako's primary reward.

- (f) All documentation regarding the specific training aids used to train Mako, including the chemical composition, purity, and packaging of the controlled substance(s) and/or currency.

- (g) All departmental or organizational policies, rules, directives, memoranda, and operating procedures relating to the training of drug and currency detector dogs for the Massachusetts State Police, including certification standards for the Massachusetts K-9 Association or any other local or national certifying organizations.

- (h) All departmental or organization polices, rules, directives, memoranda, and operating procedures relating to the field use of drug and currency detector dogs by the Massachusetts State Police and the DEA.

DEL VECCHIO & HOUSEMAN

AUSA Rachel E. Hershfang
RE: Gary Newell
June 10, 2004
Page 3

    (i)    All departmental or organizational policies, rules, rules, directives, memoranda, and operating procedures that define or outline the Massachusetts State Police minimum standard of training proficiency for drug canines.

    (j)    All departmental or organizational policies, rules, directives, memoranda, and operating procedures for the Massachusetts State Police and the DEA that define or outline the response/find ratio that the canine search teams must maintain to remain in field service.

    (k)    All records of Mako's false alert rate.

(2) **Incident Reports**

All reports relating to the use of the police canine Mako and his handlers in law enforcement, in either the state, local, or federal investigations, whether or not these uses resulted in the pursuit of criminal charges or complaints. More specifically, I am requesting:

    (a)    All reports or documentation describing the number of occasions where federal, state, or local law enforcement agents stopped vehicles on the highways or other public ways for alleged traffic violations and Mako was used to obtain probable cause for a search of the vehicle.

    (b)    All reports or documentation regarding incidents where Trooper Mark Reid and Mako were used to investigate a suspected crime.

    (c)    All videotapes depicting traffic stops in which the canine unit known as Mako was used during the investigation.

(3) **Ancillary Use Reports**

All additional reports of activities of the law enforcement dog-handler team of Trooper Reid and Mako, including but not limited to demonstrations, their use in the training of other

**DEL VECCHIO & HOUSEMAN**

AUSA Rachel E. Hershfang
RE: Gary Newell
June 10, 2004
Page 4

dog-handler teams, and any other reports detailing the Trooper Reid and Mako dog-handler team's activities not specifically related to a crime or criminal investigation. More specifically, I am requesting all records, reports, proficiency training records, including both documents and video recordings, which relate to the use of Mako.

(4) **Crime Scene Reports**

All reports or notes written by Trooper Reid regarding the stop and search of the defendant's truck on or about January 24, 2003.

(5) **Law Enforcement Policies and Training Materials**

All of the training materials and written policies of the Cambridge Police Department, the DEA, and the Massachusetts State Police in effect from January 1, 2002 to present that relate to the functions that the investigating officers performed in stopping Mr. Newell's truck and seizing items from it. At a minimum, these items would include:

(a)   All Massachusetts State Police, DEA, and Cambridge Police Department training manuals and written policies regarding each entity's participation in investigations with other law enforcement agencies or police departments.

(b)   Cambridge Police Department's training materials and written policies for motor vehicle stops, searches, and drug investigations.

(6) **Cambridge Police Department Motor Vehicle Stops**

(c)   Information regarding all motor vehicle stops made by the Cambridge Police Department from June 1, 2002 through June 1, 2004 where no drug dog was used to assist in the investigation.

(d)   Information regarding all motor vehicle stops made by the Cambridge Police Department from June 1, 2002 through June 1, 2004 where police canine units were used to assist in the investigation.

**DEL VECCHIO & HOUSEMAN**

AUSA Rachel E. Hershfang
RE: Gary Newell
June 10, 2004
Page 5

### (7) Turret Tapes

All turret tapes relating to the surveillance, investigation, and motor vehicle stop of Mr. Newell beginning on or about January 23, 2003 and continuing through the application for, execution, and return of the search warrant relating to his truck.

### (8) Police Logs

All police logs of the Cambridge Police Department for the period of January 1 through 31, 2003.

### (8) News Reports

All news articles, recordings, or videotapes regarding the Massachusetts State Police's canine unit, including but not limited to those that refer to Trooper Reid or Mako.

Finally, it appears that there are a few bate-stamped pages missing from the discovery materials that you provided so far. As soon as I complete my review of the items you sent me as part of automatic discovery, I will provide you with a list of the missing items.

Thank you for your cooperation and courtesy.

Very truly yours,

*[signature]*
Debra A. DelVecchio

DAD/ss
Enclosure
cc: Mr. Gary Newell

# DELVECCHIO & HOUSEMAN

ATTORNEYS AT LAW

The Perry Building
15 Front Street
Salem, Massachusetts 01970

Debra A. DelVecchio
Scott D. Houseman

Telephone (978) 740-5999
Telecopier (978) 740-9434

August 6, 2004

By FAX to (617) 748-3965
AUSA Rachel E. Hershfang
United States Attorney's Office
Moakley Federal Court House
One Courthouse Way, 10th Floor
Boston, MA 02110

RE: United States v. Douglas Bannerman et al.
CRIM. NO. 03-10370-DPW

Dear Rachel:

As you know, I represent Gary Newell in the above-captioned case. On June 10, 2004, I sent you a letter requesting supplemental discovery relating, *inter alia*, to the Government's use of a canine named Mako in the investigation of this case.

A short time later, we spoke by telephone and we agreed that you would send me some materials relating to this canine. I then would let you know whether I still needed the rest of the items requested in my June 10th letter.

So far, I have not received any supplemental materials from you. On July 23, 2004, you called to let me know you were having difficulty connecting with the law enforcement officers because of their preparations for the Democratic National Convention. At that time, you expected to have the materials out to me in about two weeks but they have not arrived yet.

I need to review your dog-related materials so that I can decide whether I need to additional information and/or hire an expert. I will be on vacation from August 7th through August 21st. If possible, I would like to have your documents at my office when I return.

EXHIBIT C

**DEL VECCHIO & HOUSEMAN**

AUSA Rachel E. Hershfang
RE:  Gary Newell
August 6, 2004
Page 2


　　　Thank you for your cooperation and courtesy.  Please let me know if this time frame presents a problem for you.

　　　　　　　　　　　　　　　　Very truly yours,

　　　　　　　　　　　　　　　　*[signature]*
　　　　　　　　　　　　　　　　Debra A. DelVecchio

DAD/ss
Enclosure
cc:  Mr. Gary Newell



**U.S. Department of Justice**

*United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*

*United States Courthouse, Suite 9200*
*1 Courthouse Way*
*Boston, Massachusetts 02210*

August 16, 2004

<u>By First Class Mail</u>

Debra A. DelVecchio
DelVecchio & Houseman
Perry Building
15 Front St.
Salem, MA 01970

  Re: <u>United States v. Douglas Bannerman et al.</u>
     Criminal No. 03-10370-DPW

Dear Ms. DelVecchio:

  Further to our agreement regarding my production of training logs and certifications for Mako, a State Police drug-detection dog, I was informed this morning that most of those records have apparently been destroyed. Trooper Mark Reid, Mako's handler, informed me that he has been unable to locate Mako's training logs, and that he believes they were destroyed after Mako's retirement (in about April of this year). Trooper Reid has undertaken to get copies of Mako's certifications (I have impressed upon him the importance of doing this promptly), which I will forward to you as soon as I receive them.

          Very truly yours,

          MICHAEL J. SULLIVAN
         United States Attorney

      By: *[signature]*
         Rachel E. Hershfang
         Assistant U.S. Attorney

EXHIBIT D



**U.S. Department of Justice**

*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*     *United States Courthouse, Suite 9200*
*1 Courthouse Way*
*Boston, Massachusetts 02210*

August 18, 2004

<u>By First Class Mail</u>
Debra A. DelVecchio
DelVecchio & Houseman
Perry Building
15 Front St.
Salem, MA 01970

    Re:  <u>United States v. Gary Newell</u>
           Criminal No. 03-10370-DPW

Dear Ms. Delvecchio:

    Please find enclosed certifications for "Mako," the narcotics detection dog, for 1996, 1998, and 2000, Bates numbered 5027-5029, which I received yesterday. The Trooper is pursuing certifications for the odd-numbered years, which I will pass on to you upon receipt.

                             Very truly yours,

                             MICHAEL J. SULLIVAN
                             United States Attorney

                By:   */s/ Rachel E. Hershfang*
                             Rachel E. Hershfang
Enclosures                   Assistant U.S. Attorney

cc: M. Page Kelley (with encl.)

EXHIBIT E

# DELVECCHIO & HOUSEMAN

ATTORNEYS AT LAW

The Perry Building
15 Front Street
Salem, Massachusetts 01970

Debra A. DelVecchio
Scott D. Houseman

Telephone (978) 740-5999
Telecopier (978) 740-9434

August 26, 2004

By FAX to (617) 748-3965

AUSA Rachel E. Hershfang
United States Attorney's Office
Moakley Federal Court House
One Courthouse Way, 10th Floor
Boston, MA  02110

RE: United States v. Douglas Bannerman et al.
CRIM. NO.  03-10370-DPW

Dear Rachel:

As you know, I represent Gary Newell in the above-captioned case. I am writing to confirm the current status of discovery issues in the case.

On June 10, 2004, I sent you a letter requesting supplemental discovery relating, inter alia, to the Government's use of a canine named Mako in the investigation of this case. Later that month, we spoke by telephone and we agreed that you would send me some materials relating to this canine. I then would let you know whether I still needed the rest of the items requested in my June 10th letter.

When I returned from vacation this week, I found your letter dated August 16, 2004 indicating that the canine's handler has been unable to locate the canine's training records and that they likely were destroyed. I also received your August 18, 2004 letter with copies of the canine's training certificates for 1996, 1998, and 2000.

As you know, the Court expects defense counsel to file evidentiary motions by September 22, 2004. At this point, I do not have the information that I need to complete my investigation of the case, retain a defense expert, or prepare motions on my client's behalf.

EXHIBIT F

# DEL VECCHIO & HOUSEMAN

AUSA Rachel E. Hershfang
RE:  Gary Newell
August 26, 2004
Page 2


    As we discussed by telephone yesterday, I am sending you this letter to renew my earlier requests for discovery, as set forth in my June 10th letter.

    I understand that you will be on vacation from August 27th until September 8th.  When you return from vacation, please contact me at your earliest convenience to discuss my requests and how you wish to proceed in the case.

    Thank you for your cooperation and courtesy.

                              Very truly yours,

                              Debra A. DelVecchio

DAD/ss
Enclosure
cc:  Judge Robert B. Collings
     Mr. Gary Newell