UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>                                          )<br>   v.                                    )<br>                                          )<br>3. GARY NEWELL,           )<br>                                          )<br>      Defendant.            ) | No. 03-10370-DPW |

**GOVERNMENT'S OPPOSITION TO GARY NEWELL'S MOTION
FOR SUPPLEMENTAL DISCOVERY**

The United States of America, by its attorneys, United States Attorney Michael J. Sullivan, and Assistant U. S. Attorney Rachel E. Hershfang, hereby opposes Gary Newell's ("Newell") motion for supplemental discovery. The undersigned apologizes for the late filing of this opposition; as set forth in Newell's motion, the parties have been engaged, on an ongoing basis, in attempting to resolve their differences, and it was not evident until recently that any hearing would be necessary on Newell's requests for discovery.

**I.  Open Requests for Discovery; Responses.**

As noted above, the parties have been attempting to resolve Newell's discovery requests, and have made significant progress toward that end. It is the government's understanding that only the following requests remain before the Court for resolution (references are to the numbers and letters by which these requests appeared in the Addendum to Defendant Gary Newell's Motion for Supplemental Discovery, docket no. ___) (hereinafter "Discov. Mtn.").

**Request:**

A.  **Drug Enforcement Administration Records**

    1.  <u>Motor Vehicle Stops</u>

        (a)  All Drug Enforcement Administration ("DEA") departmental or organizational policies, rules, directives, memoranda, and operation procedures in effect in January of 2003 concerning: (1) motor vehicle stops, (2) use of force by the police to effectuate such stops, (3) issuance of traffic citations, (4) drug investigations, and (5) use of police canine units.

        (b)  All DEA departmental or organizational policies, rules, directives, memoranda, and operating procedures in effect during January as of 2004 relating to drug investigations involving the participation of other federal and/or state or local law enforcement agencies.

**Response:**

Both of these requests seek the disclosure of internal DEA practices, policies and procedures, some of which might be relevant to the stop, by the Cambridge Police Department, of Newell in January, 2003. Other requests (for example, "(2) use of force by police to effectuate such stops") are unrelated to the facts of this case.

The breadth of Newell's request reveals its nature as a fishing expedition. DEA is a drug-enforcement agency, and Newell asks for all "departmental or organizational policies, rules, directives, memoranda, and operating procedures... concerning... drug investigations." This request calls for production of all DEA policies and procedures. There is no justication given for

this request, nor are these policies, practices and procedures relevant to Newell's efforts to suppress the search and seizure of his truck. The analysis of the propriety of that search will rest on an objective evaluation of probable cause, as set forth in the search warrant. See Brinegar v. United States, 338 U.S. 160, 175-76 (1949) (probable cause exists when facts and circumstances warrant person of reasonable caution to believe item described will be at location identified); Illinois v. Gates, 462 U.S. 213, 238 (1983) (totality of the circumstances test applies to determine probable cause). The subjective motivation of the officers is irrelevant, see Whren v. United States, 507 U.S. 806, 811 (1996), as is whether DEA agents (who did not conduct the stop, and were not affiants on the state search warrant) were following internal policies. United States v. Caceres, 440 U.S. 741 (1979) (where recordings obtained in violation of IRS internal policy, no suppression of recordings as defendant's constitutional rights not implicated by violation of policy).

Presumably, discovery of DEA policies would allow Newell to evaluate whether those policies were followed in the stop and search of his truck. Assuming arguendo, without commenting on the instant case, that DEA policies had been violated when Newell's truck was searched, however, such violation would not render the objects of that search inadmissible. The First Circuit has considered a similar attack in the context of a

search of a vessel on the high seas.  In <u>United States v. Hensel</u>, crew from a Coast Guard cutter boarded a Honduran-flagged ship in Canadian waters.  699 F.2d 18 (1st Cir. 1983).  The Canadian authorities seized tons of marijuana from the ship, and the captain was prosecuted in the United States for drug offenses.  On appeal, the First Circuit affirmed the district court's determination that the (warrantless) seizure had been supported by probable cause.  <u>Hensel</u>, 699 F.2d at 25-26.  The court assumed that the Coast Guard had exceeded its statutory authority and violated and its own regulations in conducting the search, <u>id</u>. at 26-27, and assumed for the sake of argument that the Coast Guard had also violated international law.  <u>Id.</u> at 24-25.  Despite these presumed violations, the First Circuit affirmed the search as valid.  Because there had been no violation of Hensel's constitutional rights, because the search was supported by probable cause, the items seized were deemed admissible.  (For similar analysis, <u>see also</u> <u>United States v. Irvine</u>, 699 F.2d 43 (1st Cir. 1983) (no suppression of items seized in violation of IRS internal policy of warning that investigation was criminal where no constitutional violation found)).

　　　Disclosure of the items sought by Newell (to the extent they exist) will be relevant only to the question of whether DEA followed its internal policies and procedures in connection with the stop and search of Newell's truck.  Because this analysis is

not germane to the real question at bar -- whether the stop and search were properly supported by probable cause, as determined by the clerk-magistrate who signed the warrant -- this discovery should be denied.

**Request:**

    2.    <u>Turret Tapes</u>

        (a)  Copies of all DEA turret tapes made on January 24, 2003 during the period from 8:00 a.m. through 12:00 noon. If such records no longer exist, please indicate the date and time they were erased or otherwise destroyed, and by whom.

        (b)  All DEA departmental or organizational policies, rules, directives, memoranda, and operating procedures in effect <u>as of</u> January of during [sic] 2003 relating to the creation, maintenance, and preservation of its turret tapes.

**Response:**

On information and belief, DEA does not make or maintain so-called "turret tapes" (recordings of agent-to-agent or agent-to-base communications). The undersigned will attempt to verify this on Monday, November 29, and will correct this assertion if it proves incorrect. If there were any DEA policies with respect to such recordings, they would not be subject to discovery for the reasons outlined in the responses to request (1), above.

**Request:**

    3.    <u>Police Logs</u>
        (a)  Unredacted copies of all DEA logs, including

>           Computer Assisted Dispatch logs, for the
>           period of 9:00 a.m. through 12:00 noon on
>           January 24, 2003.  If such records have been
>           altered or no longer exist, please indicate
>           the date and time they were altered, erased,
>           or otherwise destroyed, and by whom.
>
>   (b)     All DEA departmental or organizational
>           policies, rules, directives, memoranda, and
>           operating procedures in effect <u>as of</u> January
>           of 2003 relating to the creation,
>           maintenance, and preservation of its police
>           logs.

**<u>Response:</u>**

To the extent this request calls for <u>all</u> DEA logs that pertain to this particular time period, it is overly broad and unduly burdensome, in that it calls for production of items unrelated to charges against Newell, or charges related to this investigation.  The request will be construed as applying only to logged information pertinent to Newell or his eventual codefendants.

On information and belief, DEA does not make or maintain dispatch logs.  The undersigned will attempt to verify this on Monday, November 29, and will correct this assertion if it proves incorrect.  If there were any DEA policies with respect to such logs, they would not be subject to discovery for the reasons outlined in the responses to request (1), above.

Many other "logs" responsive to this request, including DEA-7a reports describing non-drug evidence, and DEA-7 reports describing drug evidence, have already been produced to Newell.

**Request:**

**B.   Massachusetts State Police Records**

    1.   Training, Certification, and Use of Canine Units.

[The parties have conferred with each other and with the Massachusetts State Police to ensure that these documents are provided to Newell. The undersigned does not believe there is currently any outstanding discovery request with respect to this subsection of the Addendum.]

    2.   Turret Tapes

        (a)   Copies of all Massachusetts State Police turret tapes made on January 24, 2003 during the period from 10:00 a.m. through 12:00 noon. If such records no longer exist, please indicate the date and time they were erased or otherwise destroyed, and by whom.

        (b)   All Massachusetts States Police departmental or organizational policies, rules, directives, memoranda, and operating procedures in effect since January of 2003 relating to the creation, maintenance, and preservation of its turret tapes.

**Response:**

On information and belief, The Massachusetts State Police ("MSP") do not make or maintain so-called "turret tapes" (recordings of agent-to-agent or agent-to-base communications). The undersigned will attempt to verify this on Monday, November 29, and will correct this assertion if it proves incorrect. If there were any MSP policies with respect to such recordings, they would not be subject to discovery for the reasons outlined in the

responses to request (1), above.

**Request:**

    3.   <u>Police Logs</u>

        (a)  Unredacted copies of all Massachusetts State Police logs, including Computer Assisted Dispatch logs, for the period of 9:00 a.m. through 12:00 noon on January 24, 2003. If such records have been altered or no longer exist, please indicate the date and time they were altered, erased, or otherwise destroyed, and by whom.

        (b)  All Massachusetts State Police departmental or organizational policies, rules, directives, memoranda, and operating procedures in effect since January of 2003 relating to the creation, maintenance, and preservation of its police logs.

**Response:**

To the extent this request calls for <u>all</u> MSP logs that pertain to this particular time period, it is overly broad and unduly burdensome, in that it calls for production of items unrelated to charges against Newell, or charges related to this investigation. The request will be construed as applying only to logged information pertinent to Newell or his eventual codefendants.

Whether there is or were any such logs made with respect to Trooper Mark Reid's being sent to the scene of Newell's truck on January 23, 2004, those records are not discoverable. There is no dispute that Trooper Reid and his canine, "Mako," appeared at the scene. When, or by whom, they may have been sent, is not

relevant to any issue in the case. If there were any MSP policies with respect to such logs, they would not be subject to discovery for the reasons outlined in the responses to request (1), above.

**Request:**

(From Motion for Supplemental Discovery, p.5) (b) All training evaluations of the handlers of the drug detection canine Mako, including Trooper Mark Reid, irrespective of whether those records are contained in the officer's personnel file.

**Response:**

This request seeks personal, protected information about a law enforcement officer. In support of the request, Newell has stated only that his "request for training evaluations of the drug detection dog's handler is reasonable and appropriate," given that records of the dog's performance no longer exist. Without conceding that this request is reasonable, nor that this information is discoverable, nor that the federal government has the authority or the duty to find and disclose this information, the United States Attorney's Office has requested that the Massachusetts State Police review Trooper Reid's files for any responsive information and provide any such information to the U.S. Attorney's Office. Compare United States v. Dominguez-Villa, 954 F.2d 562, 566 (9th Cir. 1992) (disclosure rule set forth in United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991)

did not extend to the personnel files of state law enforcement witnesses not within government's possession or control, as that term is used in Fed. R. Cr. P. 16(a)(1)(E))); see also Stern v. Federal Bureau of Investigation, 737 F.2d 84, 91 (D.C. Cir. 1984) (In FOIA litigation seeking disclosure of FBI OPR investigation report, court acknowledged that an employee has at least a minimal privacy interest in his or her employment history and job performance evaluations). The Massachusetts State Police, to date, have not responded to this request.

**II. Conclusion.**

For the reasons set forth above, and any adduced at argument, the government respectfully requests that Newell's supplemental discovery requests be denied.

>                         Respectfully submitted,
>                         MICHAEL J. SULLIVAN
>                         United States Attorney
>
> By:   /s/ Rachel E. Hershfang
>       RACHEL E. HERSHFANG
>       Assistant U.S. Attorney

Dated: November 28, 2004