UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
)
)
v. )      CRIMINAL NO. 03-10370-DPW
)
)
GARY NEWELL, )
        Defendant )
)
_____)

DEFENDANT GARY NEWELL'S
MOTION FOR A FRANKS HEARING
AND MOTION TO SUPPRESS EVIDENCE

Defendant Gary Newell hereby moves that this Court suppress the

fruits of a search conducted on his truck on or about January 24, 2003

pursuant to a search warrant issued by the Cambridge District Court

that same day.  As grounds therefore, the defendant states that the

search warrant is invalid for the following reasons: [1]

First, the search warrant application affidavit contains at least

two material falsehoods that were relied upon by the clerk in finding

probable cause for the issuance of the warrant.  Second, the

application sets forth police conduct that violates federal and

Massachusetts law, requiring suppression of any evidence obtained as a

result of its execution.  Third, search warrant application relies

heavily on the conduct of a dog named Mako, purportedly trained in

narcotics detection to establish probable cause; however, there is no

indication of the dog's reliability, including his "false alert" rate,

and the dog "alerted" to currency only.

---

[1] The defendant respectfully reserves the right to supplement his Motion
and this memorandum as discovery reveals further grounds for suppres-
sion.  In particular, the training, performance, and reliability of the
detection dog Mako in narcotics and currency detection as well as
Trooper Reid's qualifications and performance as a detection dog
handler are in dispute and still being investigated.

STATEMENT OF THE FACTS

On January 24, 2003, Cambridge Police Detective Stephen Edwards applied for a warrant to search the defendant's 1998 Ford pick up truck. Most of the information contained in Detective Edward's affidavit supporting his search warrant application was obtained as a result of a traffic stop involving the defendant and his truck earlier that day. The facts surrounding the traffic stop are set forth in detail in the Defendant's Memorandum in Support of his Motion to Suppress Evidence, dated November 22, 2004, at pp. 1-5, and its supporting affidavits and exhibits, which are filed herewith and incorporated by reference. In addition, a copy of the Search Warrant is attached hereto as Exhibit A. Copies of the corresponding Application for Search Warrant with its accompanying Affidavit in Support of Search Warrant are attached hereto as Exhibit B.

ARGUMENT

I.    Material Misstatements in the Warrant
      Application Require a Franks Hearing.

> [W]here the defendant makes a substantial
> preliminary showing that a false statement
> knowingly and intentionally, or with reckless
> disregard for the truth, was included by the
> affiant in the warrant affidavit, and if the
> allegedly false statement is necessary to the
> finding of probable cause, the Fourth Amendment
> requires a hearing be held at the defendant's
> request. In the event that at that hearing the
> allegation of perjury or reckless disregard is
> established by the defendant by a preponderance of
> the evidence, and, with the affidavit's false
> material set to one side, the affidavit's remaining
> content is insufficient to establish probable
> cause, the search warrant must be voided and the
> fruits of the search excluded to the same extent as
> if probable cause was lacking on the face of the
> affidavit.

Franks v. Delaware, 438 U.S. 154, 156 (1978).

In this case, there are at least two material misstatements in the affidavit used to establish probable cause for the issuance of the search warrant:

1)  Mr. Newell did not drive his truck through a red light signal without coming to a stop.  This assertion, supported by the defendant's affidavit, is corroborated by the fact that he was never cited for a red light violation, or any other moving violation, as a result of the traffic stop.  The officer's misrepresentation is critical to the determination of probable cause for the search warrant:  he used the defendant's alleged red light violation as his justification for the initial traffic stop which, in turn, allowed the police to discover the packages that became the subject of the warrant.

2)  The search warrant affidavit also states:

A criminal check was conducted by means of the computer on Mr. Newell and as a result it was learned that he has an adult record dating back to 1977.  Included within these offenses are past <u>convictions</u> for narcotics <u>violations</u>. (emphasis supplied).

<u>Affidavit in Support of Search Warrant</u>, <u>Exhibit B</u>, p. 2.

In fact, Mr. Newell has a <u>single</u> narcotics-related conviction on his adult record:  on December 21, 1977, he was convicted of "frequenting a place where controlled substances are used" and was ordered to pay a $515 fine.  A companion charge in the Complaint of "possessing dangerous drugs" was dismissed.  The defendant's only other conviction was for "careless driving" in 1978 for which he was fined $305.  An "operating under the influence" charge in the same Complaint was dismissed.  *See*, <u>Oregon State Police Letter dated October 28, 2004</u> and its

3

enclosures (with defendant's social security number redacted for filing purposes), attached hereto as Exhibit C and United States Pretrial Services' summary dated February 3, 2004, attached as Exhibit D.[2]

In sum, court records document that Mr. Newell's entire criminal record consists of two misdemeanor cases, both of which were resolved more than 25 years ago. To the extent that these convictions are relevant at all, they show that the defendant had a single drug-related conviction in 1977 for being present where drugs were used. In that case, the more serious charge of possessing a controlled substance was dismissed.

Had Mr. Newell's criminal record been detailed accurately in the affidavit, his convictions likely would have considered too insignificant and remote in time to support probable cause for the search of his truck in 2004. On the other hand, the officer's erroneous description of the defendant's record suggested that he had multiple drug convictions stemming from far more recent illegal activity.

Both of these misstatements in reporting the defendant's conduct were either deliberate or in reckless disregard of the truth. They also were necessary to the clerk's finding of probable cause for the search warrant. The so called "good faith exception" announced in United States v. Leon, 468 U.S. 897 (1984) would not apply. See, for example, United States v. Fuccillo, 808 F.2d 173, 178 (1st Cir. 1987)(good faith exception

---

[2] Defense counsel requested a copy of the computer check information relied upon by the police during the traffic stop. In a letter dated October 8, 2004, the Government responded that, "[the] DEA did not retain a paper copy of your client's record after it was run on the day his truck was stopped and searched."

does not apply where police "were reckless in not including in the affidavit information which was known or easily accessible to them," or "simply did not take every step that could reasonably be expected of them"); United States v. Vigeant, 176 F.3d 565, 572-73 & n.8 (1st Cir. 1999)(holding that failure to disclose material information casting doubt on the reliability of an informant was reckless, precluded a finding of good faith, and required suppression).

> II.    Search Warrant Affidavit Sets For Illegal
>        Police Conduct that Invalidates the Search Warrant

The affidavit states:

> After K-9 Mako walked through the rear of this truck's bed, Trooper Reid moved the items at the rear of the bed forward, that were exposed to the wind.  After doing this, K-9 Mako made a second check of the rear of the truck and was observed to have an aggressive reaction while working in the area of the white plastic bag containing the two Fed-Ex boxes.  While scratching and biting, K-9 Mako's tooth tore into the box and ripped open a small hole.  Upon examining the hole in this box, officers noted that this Fed-Ex box contained U.S. currency.  Trooper Reid indicates that this change in behavior is a positive response for the presence of narcotics odor.  (Emphasis supplied.)

Search Warrant Affidavit, Exhibit B, p. 3.

At the point at which Trooper Reid entered the interior of the defendant's truck, the police were still at the Terry stage of their investigation.  They did not have probable cause to believe that the defendant was engaged in any criminal activity. The defendant never consented to a search of his truck by a drug detection canine.  Consequently, Trooper Reid was not authorized to enter the interior of the defendant's truck to have Mako inspect the packages.

5

Even assuming that Mako could be deployed to the interior of the defendant's truck, Trooper Reid's manipulation of the items inside the truck constituted a seizure of those items beyond what is permissible during a threshold inquiry. The affidavit indicates that Mako alerted to the plastic bag containing the packages only after these items were moved. The dog opened one of the packages with his teeth in the absence of a warrant while under the direction of Trooper Reid. The police officers then looked inside the package without a warrant and found currency.

These facts, as recited in the affidavit, clearly demonstrate that an illegal warrantless search of the contents of the package had been conducted at the scene by the investigating officers under both Massachusetts and federal law. See, Arizona v. Hicks, 480 U.S. 321 (1986)(Officer's actions in moving inside defendant's home to locate serial numbers while lawfully present constituted a "search" which had to be supported by probable cause). See also, Commonwealth v. Garcia, 34 Mass. App. Ct. 645 (1993)(Removal of plastic bag observed in plain view on floor of vehicle by officer outside after valid traffic stop required probable cause and warrant, or exigent circumstances, absent consent to search) and Commonwealth v. Watson, 430 Mass. 725 (2000)(Search of suitcases after narcotics dog alerted to them proper when conducted after warrant issued) with, Texas v. Brown, 460 U.S. 734 (1983)(Police may examine and seize a tied-off balloon containing powder in plain view during valid traffic stop that is consistent with packaging of narcotics in police officer's experience and training). Compare also, United States

v. Lyons, 898 F.2d 210 (1990)(Woodlock, J. dissenting)(Use of a
key seized from defendant during search incident to a lawful
arrest to unlock but not open a nearby storage container did not
violate Fourth Amendment).  Therefore, since the evidence used to
support the issuance of the warrant is the fruit of a preliminary
illegal search of the package, it must be suppressed.  Wong Sun
v. United States, 371 U.S. 471, 485 (1963); United States v.
Scott, 270 F.3d 30, 40 (1st Cir. 2001).

        III.  Probable Cause Cannot Be Based Upon Detector
              Dog's Conduct When Affidavit Fails to Provide
              Information Concerning Its Reliability

        The Government has the burden of proving that the search
and seizure of the defendant's truck were based on probable
cause.  Carroll v. United States, 267 U.S. 132, 155-156 (1925).
This is true when, as in the case at bar, probable cause is based
on the alleged "alert" of a dog.  See, United States v. Place,
462 U.S. 696 (1983).

        The finding of probable cause is contingent on the training
and reliability of the alerting dog.  See, United States v.
Colon, 845 F.Supp 923, 928 (D.P.R. 1994).  In this case, the
search warrant affidavit states, "Trooper Reid indicates that K-9
Mako has made positive indications for the presence of narcotics
order and located currency in (sic) over thirty occasions."
(Search Warrant Application, Exhibit B, p. 3).  However, there is
no indication in the application that Mako was ever trained or
certified to detect currency, the only object to which he
allegedly alerted.  Further, from the discovery materials

                                 7

provided, it appears that Mako's most recent training and certification in narcotics detection took place in 2000, at least two years prior to the search of Mr. Newell's truck.

Even if Mako had more recent narcotics detection training, "[t]he fact that a dog is certified should not be sufficient in and of itself to establish probable cause." United States v. Florez, 871 F.Supp. 1141, 1420 (D.N.M. 1994). Certified dogs have been known to falsely alert. See, Doe v. Renfrow, 475 F.Supp. 1012 (N.D.Ind.1979), aff'd in part, 631 F.2d 91 (7th Cir. 1980)(no drugs found on thirty-three out of fifty junior high and high school students to which narcotics dogs alert); United States v. Brown, 731 F.2d 1491, modified, 743 F.2d 1505 (11th Cir. 1984)(no drugs found after narcotics dog alerted to luggage at airport); United States v. Young, 745 F.2d 733 (2d Cir. 1984)(no drugs found after narcotics dog alerted to defendant's apartment.) In fact, no drugs were found in Mr. Newell's truck. Without specific information concerning Mako's reliability and false alert rate, his conduct could not be used to find probable cause.

Finally, where documentation on a narcotics dog is absent or incomplete, a proper evaluation of a dog's reliability cannot take place. See, Horton v. Goose Creek Indep. Sch. Dist., 690 F.2d 470 (5th Cir. 1982) (holding assertion that narcotics dogs were "quite reliable" insufficient where no comprehensive records kept of those incidents where dogs' falsely alerted and remanding for a development of the record on the dogs' reliability.) Since Trooper Reid destroyed Mako's records during the litigation of

this case, there is no documentation concerning Mako's reliability.  Therefore, even now, the Government cannot meet its burden of showing probable cause to search the defendant's truck.

### CONCLUSION

For the foregoing reasons, defendant submits that the Court should hold a <u>Franks</u> and/or suppression hearing, and suppress all of the fruits of the stop and search of the defendant's truck on January 24, 2003.

### REQUEST FOR EVIDENTIARY HEARING

Defendant requests an evidentiary hearing on this motion.

### REQUEST FOR LEAVE TO FILE
### ADDITIONAL DOCUMENTS AND TO AMEND MOTION

The defendant respectfully reserves the right to amend his <u>Motion to Suppress</u> pursuant to <u>Franks</u> v. <u>Delaware</u>, 438 U.S. 154, 156 (1978) to include any additional grounds that may emerge as a result of a suppression hearing, including the suppression hearing relating to the defendant's warrantless detention and search of his truck.  He also requests leave to find any additional documents in support of such amendments, including memoranda of law and supplemental affidavits.

Respectfully submitted,
GARY NEWELL,
By his attorney,

Debra A. DelVecchio
B.B.O. #542139
DEL VECCHIO & HOUSEMAN
The Perry Building
15 Front Street
Salem, MA  01970
(978) 740-5999

DATED:   November 22, 2004

CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of this document was served upon the attorney of record for each party and each party appearing *pro se*, by mail, hand delivery, facsimile, a courier service, on 11/22/04

9

# SEARCH WARRANT

**G.L. c. 276, §§ 1-7**

TRIAL COURT OF MASSACHUSETTS

District _____ COURT DEPARTMENT

Cambridge _____ DIVISION

SEARCH WARRANT DOCKET NUMBER

0352 W23

## TO THE SHERIFFS OF OUR SEVERAL COUNTIES OR THEIR DEPUTIES, ANY STATE POLICE OFFICER, OR ANY CONSTABLE OR POLICE OFFICER OF ANY CITY OR TOWN, WITHIN OUR COMMONWEALTH:

Proof by affidavit, which is hereby incorporated by reference, has been made this day and I find that there is **PROBABLE CAUSE** to believe that the property described below:

- [X] has been stolen, embezzled, or obtained by false pretenses.
- [X] is intended for use or has been used as the means of committing a crime.
- [X] has been concealed to prevent a crime from being discovered.
- [X] is unlawfully possessed or concealed for an unlawful purpose.
- [X] is evidence of a crime or is evidence of criminal activity.
- [ ] other *(specify)* _____

**YOU ARE THEREFORE COMMANDED** within a reasonable time and in no event later than seven days from the issuance of this search warrant to search for the following property:

Controlled Substances as defined in C94c, U.S currency and/or any other proceeds related to the distribution of controlled substances.

Federal Express cardboard boxes, (1) large 13"X18"X3"D   (2) 12"X13"X3" D

- [X] at:

    1998 Ford F15  VIN#  1FTZF18W9WNB85858   color white

which is occupied by and/or in the possession of: _____ Gary Dean Newell     DOB 07-06-1951

- [ ] on the person or in the possession of:

You [ ] are [X] are not  also authorized to conduct the search at any time during the night.

You [ ] are [X] are not  also authorized to enter the premises without announcement.

You [ ] are [X] are not  also commanded to search any person present who may be found to have such property in his or her possession or under his or her control or to whom such property may have been delivered.

**YOU ARE FURTHER COMMANDED** if you find such property or any part thereof, to bring it, and when appropriate, the persons in whose possession it is found before the
Cambridge _____ Division of the _____ District _____ Court Department.

DATE ISSUED: January 24, 2003

SIGNATURE OF JUSTICE, CLERK-MAGISTRATE OR ASSISTANT CLERK

X _____

FIRST OR ADMINISTRATIVE JUSTICE
WITNESS: Ro'Anne Sragow

PRINTED NAME OF JUSTICE, CLERK-MAGISTRATE OR ASSISTANT CLERK
Robert A. Picciolo

TC-SW-1 (7/89)

Blumberg No. 5114

DEFENDANT'S EXHIBIT
A

A search warrant must be executed as soon as reasonably possible after its issuance, and in any case may not be validly executed more than 7 days after its issuance. The executing officer must file his or her return with the court named in the warrant within 7 days after the warrant is issued. G.L. c. 276, §3A.

This search warrant was issued on ___JANUARY 24,___ ,2003 , and I have executed it as follows:
                                                                DATE

The following is an inventory of the property taken pursuant to this search warrant:

1. $221,910.00   US CURRENCY
2. 1998 FORD F15 TRUCK   VIN # 1FTZF18W9WNBB5858
3. (2) FED EXPRESS BOXES
4. COOLER
5. (2) TARPS
6. clothing
7. Ski's & Ski boots
8. TAN CANVAS TYPE duffle bag
9. white plastic shopping bags
10. Registration to 1998 FORD Truck
11. _____
12. _____
13. _____
14. _____
15. _____
16. _____
17. _____
18. _____
19. _____
20. _____

(attach additional pages as necessary)

This inventory was made in the presence of: ___S/A BRIAN TOMASETTA___

I swear that this Inventory is a true and detailed account of all the property taken by me
on this search warrant.

| SIGNATURE OF PERSON MAKING SEARCH X _Stephen K Edwards_ | DATE AND TIME OF SEARCH 01-24-2003   11:05 pm | SWORN AND SUBSCRIBED TO BEFORE X _____ Signature of Justice, Clerk-Magistrate or Assistant Clerk |
| PRINTED NAME OF PERSON MAKING SEARCH STEPHEN K EDWARDS | TITLE OF PERSON MAKING SEARCH POLICE OFFICER | DATE SWORN AND SUBSCRIBED TO 1-31-03 |

APPLICATION FOR SEARCH WARRANT    **TRIAL COURT OF MASSACHUSETTS**

NAME OF APPLICANT                                    District                    COURT DEPARTMENT
Stephen K. Edwards

POSITION OF APPLICANT                                Cambridge                   DIVISION
Police Officer

SEARCH WARRANT DOCKET NUMBER
0.352.SW3

I, the undersigned **APPLICANT**, being duly sworn, depose and say that:

1.  I have the following information based upon the attached affidavit(s), consisting of a total of _____ pages, which is (are) incorporated herein by reference.

2.  Based upon this information, there is **PROBABLE CAUSE** to believe that the property described below:

    [X] has been stolen, embezzled, or obtained by false pretenses.
    [X] is intended for use or has been used as the means of committing a crime.
    [X] has been concealed to prevent a crime from being discovered.
    [X] is unlawfully possessed or concealed for an unlawful purpose.
    [X] is evidence of a crime or is evidence of criminal activity.
    [ ] other (specify)_____

3.  I am seeking the issuance of a warrant to search for the following property (describe the property to be searched for as particularly as possible):

    Controlled Substances as defined in C94c, U.S currency and/or any other procee

    related to the distribution of controlled substances.

    Federal Express cardboard boxes, (1) large 13"X18"X3"D    (2)  12" X 13"X3" D

4.  Based upon this information, there is also probable cause to believe that the property may be found (check as many as apply):
    [X] at (identify the exact location or description of the place(s) to be searched):

    1998 Ford F15  VIN# 1FTZF18W9WNB85858  color white

    which is occupied by and/or in the possession of: Gary Dean Newell   DOB 07-06-1951

    [ ] on the person or in the possession of (identify any specific person(s) to be searched):

    [ ] on any person present who may be found to have such property in his or her possession or under his or her control or to whom such property may have been delivered.

**THEREFORE,** I respectfully request that the court issue a Warrant and order of seizure, authorizing the search of the above described place(s) and person(s), if any, to be searched, and directing that such property or evidence or any part thereof, if found, be seized and brought before the court, together with such other and further relief that the court may deem proper.

    [ ] have previously submitted the same application.
    [X] have not previously submitted the same application.

PRINTED NAME OF APPLICANT
Stephen K. Edwards

SIGNED UNDER THE PENALTIES OF PERJURY

X _Stephen K. Edwards_
                Signature of Applicant

SWORN AND SUBSCRIBED TO BEFORE

X _____
        Signature of Justice, Clerk-Magistrate or Assistant Clerk

1/24/03
DATE

DEFENDANT'S EXHIBIT
B
Blumberg No. 5114

TC-SW-1 (7/89)

January 24, 2003

### Affidavit in Support of a Search Warrant

I Stephen K. Edwards depose and state:

I am a member of the Cambridge Police Department. I have been a police officer for seventeen years. I have been assigned to the Special Investigations Unit for approximately fifteen years. My duties and responsibilities include the enforcement of narcotic related offenses. I have received specialized training in the field of narcotics enforcement. During the course of my career, I have made numerous arrests. I have been the affiant of over one dozen search warrants. I have also worked in an undercover capacity and made over one dozen purchases of controlled substances. I have participated in the execution of numerous search warrants.

On January 24, 2003, at approximately 1015 hours, Cambridge Police Detective Stephen Edwards was on Monsignor O'Brien Highway at the entrance of the Twin City Mall in Cambridge. At this time, this officer made observation of a white Ford pick-up truck bearing Oregon registration WHZ214. The operator of this vehicle was observed to pass through a red traffic signal with out coming to a stop. As a result of making this observation, this officer requested the assistance of a marked cruiser to stop this vehicle.

Cambridge Patrolmen David Diamond and James Ruffing responded to assist. Once Officers had this vehicle stopped, they requested the operator produce his license and registration. The driver produced an Oregon drivers license identifying himself as Gary Dean NEWELL, DOB 07/06/51, of 34637 Devonshire Drive, Eugene, Oregon. This operator supplied documents stating his ownership of the vehicle. Detective Reynolds then joined officers at the stop and walked up to the truck and observed through the rear window of the cap several items strewn about the bed of the truck. Included within these items were a pair of skis, a cooler, a toolbox, and a large white plastic bag containing two Fed-Ex boxes. This officer made no note of any suitcase or cold weather clothing that would be consistent with one who is travelling across country.

This officer then had an opportunity to speak with Mr. Newell. This officer inquired as to where Mr. Newell was staying in the area. NEWELL replied that he was staying at the Holiday Inn Express and that he had already checked out. A

1

few moments later, NEWELL contradicted himself and stated that he has to go back to this hotel. NEWELL stated to this officer that NEWELL had paid his bill but still had to go back to the hotel room. This officer inquired of Mr. Newell as to the purpose of his trip. Mr. Newell responded that he was going skiing in the White Mountains.

In speaking with Mr. Newell, this officer found him to be nervous. As they spoke, Mr. Newell was observed to be looking all around. This officer made further observation of Mr. Newell each time this officer looked in the rear of the truck bed. On each occasion, Mr. Newell was found to be looking in the same direction then was observed to look toward the sky. Each time he was asked a question, Mr. Newell would hesitate prior to responding. Based upon Mr. Newell's overall demeanor, I found him to be nervous.

A criminal check was conducted by means of the computer on Mr. Newell and as a result it was learned that he has an adult record dating back to 1977. Included within these offenses are past convictions for narcotics violations.

This officer explained to Mr. Newell that because Mr. Newell was extremely nervous and that things were not flowing very well, Investigators believed that there is a possibility of contraband in the Federal Express packages and/or the vehicle. Based upon Mr. Newell's nervousness and inconsistent statements, this officer asked Mr. Newell if he would allow this Officer to look into the vehicle. Mr. Newell replied to this officer, "Yeah jump in the back if you want to". This officer began a check of this vehicle's contents and as I came to the white plastic bag containing the two Fed-Ex boxes, this officer inquired of Newell as to what was in the Federal Express containers. Mr. Newell replied that these  containers were presents for his girlfriend. Mr. Newell was asked by this Officer for permission to look in the Federal Express packages, Mr. Newell replied, "no".

As a result of the facts and circumstances surrounding this motor vehicle stop, this officer informed Mr. Newell that we had concerns and wished to have the vehicle checked by a dog. This officer then asked Mr. Newell a second time about the contents of the Fed-Ex packages. Mr. Newell responded, "We're just gonna have to wait for your guy". Officers then requested the assistance of a canine trained in the detection of narcotics odor.

ROBERT L. MOSCOW
Chief Magistrate

2

Trooper Mark Reid of the Massachusetts State Police and K-9 Mako arrived on scene. Trooper Reid has been a member of the state police for over ten years. He has been assigned to the K-9 Unit for over seven years. Since being assigned to the K-9 Unit, Trooper Reid has been the assigned as the handler of K-9 Mako. K-9 Mako is a nine year old German Shepherd. During 1996, Trooper Reid and K-9 Mako participated an extensive certification program which included some two hundred and fifty hours of classroom and practical training for the detection of narcotic odors. This course of instruction was directed by the Connecticut State Police. As a result of successfully completing this course of instruction, K-9 Mako received his certification from NESPAC. Since receiving this certification, Trooper Reid and K-9 Mako have undergone an annual re-certification which is conducted by the New Hampshire State Police. Additionally, Trooper Reid and K-9 Mako are required to participate in routine weekly practical training sessions. According to the records maintained by Trooper Reid, K-9 Mako has participated in over eighteen hundred narcotics searches. Of these actual searches K-9 Mako has detected the presence of narcotic odor and has made in excess of three hundred and fifty positive finds. These finds have resulted in the seizure of heroin, cocaine and marijuana. Trooper Reid indicates that K-9 Mako has made positive indications for the presence of narcotics odor and located currency in over thirty occasions.

Once Trooper Reid arrived on scene he introduced K-9 Mako to the exterior of this white Ford pickup. As the dog completed a check of the vehicle's exterior he was introduced to the cab area of this vehicle. After completing the interior, the dog was led to the rear of the vehicle where he jumped onto the rear bed. As Trooper Reid stood at the rear of this truck he noted a strong odor of oranges. At the time this search was conducted, Trooper Reid also noted that it was extremely cold with a moderate wind blowing into the rear of this truck bed. After K-9 Mako walked through the rear of this truck's bed, Trooper Reid moved the items at the rear of the bed forward, that were exposed to the wind. After doing this, K-9 Mako made a second check of the rear of the truck and was observed to have an aggressive reaction while working in the area of the white plastic bag containing the two Fed-Ex boxes. While scratching and biting at these boxes, K-9 Mako's tooth tore into the box and ripped open a small hole. Upon examining the hole in this box, officers noted that this Fed-Ex box contained U.S. currency. Trooper Reid indicates that this change in behavior is a positive response for the presence of narcotics odor.

ROBERT L. MOSCOW
Clerk-Magistrate

3

The method by which this currency is packaged is significant to this investigation because it is consistent with this officer's training an experience of the manner that those involved in the distribution of controlled substances traditionally transport the proceeds of the illegal drug trade.

After observing the contents of this box this officer inquired of Mr. Newell as to the box's contents. Mr. Newell declined to comment, and stared back at this officer with a blank stare. This officer then explained to Mr. Newell our concerns about this money and that it was to be secured pending further investigation. This officer also informed Mr. Newell at this time that we would be securing his vehicle pending this investigation. He was further informed of my intentions of seeking a search warrant. Mr. Newell was advised that he was free to go.

Detective Stephen K. Edwards
Cambridge Police Department

Assistant Clerk Magistrate
Cambridge District Court

4

# Oregon

Theodore R. Kulongoski, Governor

**Department of State Police**
Identification Services Section
3772 Portland Road NE
Salem, OR 97303
(503) 378-3070 (Voice/TTY)
FAX (503) 378-2121

October 28, 2004

NEWELL, GARY D
34637 DEVONSHIRE DRIVE
EUGENE, OR 97405

This letter acknowledges receipt of your fingerprint card and request for criminal history record. A technical search of our master fingerprint file was conducted on the above date and did reveal a criminal history record under the following name and state identification number:

NAME/    **NEWELL, GARY DEAN**
SID/     **OR04794628**

A complete copy of the criminal history record, as it appears in our files, is enclosed along with the submitted fingerprint card.

The Identification Services Section is a Division of the Department of State Police and designated by law as the central repository for criminal offender information for the State of Oregon.

Sincerely,

*William E Buckley*

William E Buckley Jr.
Principal Executive Manager A

WEB: jmk/id/cor
STATE OF OREGON         )
                        )ss.
County of Marion        )

Signed or attested before me on *Oct 29*, 20*04* by    William E Buckley Jr.

*Peggy E. Johnsen*

Notary Public – State of Oregon



OFFICIAL SEAL
PEGGY E JOHNSEN
NOTARY PUBLIC - OREGON
COMMISSION NO. 349509
MY COMMISSION EXPIRES SEP. 3, 2005



DEFENDANT'S EXHIBIT
C

```
RR.RAB.OR0SBI000.NEWELL,GARY DEAN - OWN RECORD.SID/04794628.PUR/M
##############################################################
##############################################################
BEP00120000.REUR  0012  LEDS
RR.RAB.OR0SBI000.NEWELL,GARY DEAN - OWN RECORD.SID/04794628.PUR/M

OREGON CCH RECORD FOR SID/OR04794628 AS OF 10-22-2004 AT 12:13
BECAUSE ADDITIONS OR DELETIONS MAY BE MADE AT ANY TIME,
A NEW COPY SHOULD BE REQUESTED WHEN NEEDED FOR SUBSEQUENT USE
IF FURTHER DETAIL IS DESIRED, COMMUNICATE DIRECTLY TO CONTRIBUTOR

ACTION ITEM: IF SUBJECT IS ARRESTED, SUBMIT 'STATE' FINGERPRINT CARD ONLY -
                              'FBI' CARD NOT NEEDED
* MULTI-STATE OFFENDER - MAKE NCIC-III INQUIRY FOR NON-OREGON RECORDS *

SID/OR04794628 FBI/883184R8
NAM/NEWELL,GARY DEAN    DOB/07-06-1951  SEX/M  RAC/W  POB/OR
  HGT/511  WGT/175  HAI/  EYE/  FPC/161412CO1317TT122116
* ADDITIONAL IDENTIFIERS *
SMT/SC L THGH
SOC/████████

ARREST #02 10-05-1978    OR0200000-S0 LANE C0UNTY
  NAME USED/NEWELL, GARY DEAN    LAN/100097
  01 ORS 487.540 DRIVE UNDER INFLUENCE INTOX
  COURT
   01 09-11-1979 OR020023J-DIS CRT EUGENE              DISMISSED
      ORS 487.540 DRIVE UNDER INFLUENCE INTOX
      DOCKET #/7840591
   02 09-11-1979 OR020023J-DIS CRT EUGENE              CONVICTED
      ORS 487.235 CARELESS DRIVING
      $305-FINE   DOCKET #/7928877
      PROVISION/BLF0RF

ARREST #01 09-12-1977    OR0200200-PD EUGENE
  NAME USED/NEWELL, GARY DEAN    LAN/100097
.. 01 ORS 167.207 CRIMINAL ACTIVITY DRUGS-P0SS DANG DRUG
  COURT
   01 12-21-1977 OR020025J-CIR CRT EUGENE              DISMISSED
      ORS 167.207 CRIMINAL ACTIVITY DRUGS
      DOCKET #/775297
   02 12-21-1977 OR020025J-CIR CRT EUGENE              CONVICTED
      ORS 167.222 FREQ PLACE CONTROLLED SUB USE
      $505-FINE   DOCKET #/776315

ENTERED 09-23-1977  LAST UPDATED 06-20-2000

OREGON STATE POLICE
IDENTIFICATION SERVICES SECTION
3772 PORTLAND ROAD NE
SALEM, OREGON 97303-2500
OR0SBI000  (503) 378-3070
```



# REQUEST FOR OREGON CRIMINAL HISTORY INFORMATION
## ORS 181.555 AND ORS 181.560

**INSTRUCTIONS:** Please complete this form (or substantial copy) when requesting criminal history information. Mail request with $15.00 check or money order payable to **OREGON STATE POLICE**.

**BILLING CUSTOMERS**
Identification Services Section
Attn: Open Records
3772 Portland Road N.E.
Salem, Oregon 97303-2500

**DIRECT PAYMENT CUSTOMERS**
Identification Services Section
Attn: Unit 11
PO Box 4395
Portland, OR 97208-4395

**NOTE:** The requested record information is furnished on the basis of name and/or description similarity with the subject of your inquiry. In the event a reportable record is found, subject will be advised of inquiry.

**SUBJECT INFORMATION:** All information is **REQUIRED**. Failure to supply complete information may effect results of inquiry.

Please **TYPE** or **PRINT CLEARLY**

(FOR OSP USE ONLY)

Name: NEWELL GARY DEAN
Last / First / Middle name

Alias/Maiden: _____

Date of Birth: 7 - 6 - 1951 Soc Sec #: ███ - ███ - ███
If unknown, approx. age _____

Current **or** Last Known Address: 34637 DEVONSHIRE DRIVE EUGENE, OR 97405
City / State / Zip

## REQUESTOR INFORMATION:

*If information is sought for employment purposes, please check one:*
Applicant has been advised of this request: **In Person** _____ **By phone or letter** _____

_____ Check or money order enclosed (**$15.00 per request**, *please submit one check for multiple requests*)

_____ Please bill my account.

**REQUESTOR'S NAME & ADDRESS**
(please **PRINT** or **TYPE**)

Phone No: ( ) _____

**NOTE:** Established billing customers may FAX their requests to : **(503) 378-2121**

GARY DEAN NEWELL
34637 DEVONSHIRE DRIVE
EUGENE, OR 97405

## COPY OF OWN RECORD REQUEST

This form is to be used ONLY when requesting a copy of your own Oregon Criminal History information or clearance letter.   This form may be copied.

NAME: NEWELL        GARY        DEAN
Last            First            Middle

OTHER NAMES USED: X

DATE OF BIRTH: 7 / 6 / 51
month    day    year

SOCIAL SECURITY NUMBER:  (optional) ████ - ████ - ████

YOUR MAILING ADDRESS: 34637 DEVONSHIRE DRIVE
Street or P.O. Box

EUGENE            OR            97405
City                State            Zip Code

USA
Country

TELEPHONE (541) 747 4304

## MY CHECK OR MONEY ORDER, PAYABLE TO OREGON STATE POLICE, IS INCLUDED FOR THIS SERVICE AS FOLLOWS:

COPY OF OWN RECORD ($12.00)          12 00
PLEASE NOTARIZE RESPONSE ($5.00)       5 00
TOTAL INCLUDED                       17 00

**Your fingerprint card will be returned with your response.

**Newell, Gary**
**DOB: 7/6/51**

**PRIOR RECORD:**       **Page 1**

| DATE: | OFFENSE: | COURT: | DISPO: |
|-------|----------|--------|--------|

A check with the Massachusetts Criminal History Systems Board reveals no known prior criminal record.

FBI Rap sheet reveals the following:

| DATE: | OFFENSE: | COURT: | DISPO: |
|-------|----------|--------|--------|
| 9/12/77 | Poss. Dang. Drugs | Eugene, OR Circuit Court | 12/21/77 dism. |
| | Freq. Place Control Substance Abuse | Eugene, OR Circuit Court | 12/21/77 convicted $515 Fine |
| 10/5/78 | Drive Under Influence Intoxicated | Eugene, OR District Court | 9/11/79 Dismissed |
| | Careless Driving | Eugene, OR District Court | convicted, $305 Fine |



DEFENDANT'S EXHIBIT D    Blumberg No. 5114