UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v.                                      )<br>)<br>)<br>GARY NEWELL,                      )<br>          Defendant              )<br>)<br>_____) | CRIMINAL NO. 03-10370-DPW |

### AFFIDAVIT OF GARY NEWELL

I, Gary Newell, depose and state as follows:

1. I am the person named in the above-referenced indictment.

2. At approximately 10:00 A.M. on January 24, 2003, I was washing off my 1998 Ford pick up truck in one of the bays of a self-serve car wash on Route 28 in Cambridge, Massachusetts. My truck had a valid Oregon license plate and was registered in my true name and address in Oregon. I also had a valid license to drive a motor vehicle issued from the State of Oregon.

3. A few minutes later, I drove my truck out of the car wash and took a legal right turn onto Route 28 heading northbound away from Boston. At the point at which Route 28 splits off to the left, I veered to the right and then took the first left exit. I did not go through any red traffic lights without stopping or commit any other traffic offense.

4. After I took this left-sided exit, I was pulled over by Cambridge police officers driving a marked cruiser with its lights and siren on.

5. The officers immediately ordered me out of my car at gun point and I was brought to the rear of my truck on the passenger side. They asked for my license and registration, both of which I produced. One of the officers took my paperwork to the cruiser. The second uniformed officer stood right next to me from then on. These officers told me that I was stopped because my truck matched the description of a vehicle involved in a bank robbery.

6. A plain clothes police officer arrived and repeated that my truck matched the description of a bank robbery vehicle and that a witness was on the way to look at it. He questioned me about my activities, my truck, and the items inside it.

7. After I had been standing in the cold for more than half an hour, I asked the plain clothes officer if a witness really was on the way to look at my truck. He said no but indicated he was interested in what I had in my truck.

8. This officer looked inside my truck several times. In particular, he asked me more than once if he could look inside the two Federal Express boxes that were in the back of my truck. I always said, "No."

9. I did not consent to a search of my truck's contents.

10. Several more police officers came and went from the scene. More than an hour after I was stopped by the police, an officer arrived with dog.

11. The dog sniffed the exterior and interior of my truck without my consent.

12.  Afterward, the officer with the dog went over to speak with other officers. I could see them talking but could not hear what they said to one another. Then the dog officer took the dog to the rear of my truck a second time.

13.  A few minutes later, the plainclothes officer came over and told me that the dog ripped opened one of the Federal Express boxes in my truck and found currency. He told that the police were keeping my truck and everything inside it, and that they would be applying for a search warrant. This officer instructed me to give him a telephone number where I could be reached and I complied.

14.  I then was told for the first time that I was "free to leave" and I did. It was approximately 12:30 P.M.

15.  No police officer ever informed me of my rights or told me that I was being stopped for a red light violation. I was never given a traffic citation or charged with any crime that day.

Signed under the pains and penalties of perjury this ____ day of November, 2004.

                                                    _____
                                                    Gary Newell

**CERTIFICATE OF SERVICE**

I hereby certify that a true and complete copy of this document was served upon the attorney of record for each party and each party appearing pro se, by mail, ~~hand-delivery, facsimile,~~ a courier service, on __11/22/04__

_[signature]_

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) CRIMINAL NO. 03-10370-DPW |
| GARY NEWELL,<br>    Defendant | ) |

AFFIDAVIT OF DEBRA A. DEL VECCHIO

I, Debra A. DelVecchio, depose and state as follows:

1. I was admitted to practice law in Massachusetts and the federal court in 1983. I maintain a law office at 15 Front Street in Salem, Massachusetts. I was appointed to represent Gary Newell, the defendant in the above-referenced indictment on March 15, 2004. Mr. Newell was charged in this case by an indictment returned on December 4, 2003.

2. I have reviewed the discovery provided by the government, including laboratory analyses, the search warrant, search warrant application, Detective Stephen Edwards' affidavit in support of it, and the search warrant return.

3. Based upon my review of the discovery materials, no narcotic substances were found in Mr. Newell's truck.

4. In a letter dated April 6, 2004, I made a formal request for to the government to preserve its evidence against my client. In a follow up letter dated June 10, 2004, I asked the government, *inter alia*, for copies of the training and performance records for the detector dog named Mako and his handler Massachusetts State Trooper Mark Reid relating to narcotics and currency detection.

5. In a letter dated August 16, 2004, the government advised me that Trooper Reid had "destroyed" virtually all of Mako's training and performance records sometime after the dog was retired "in about April of this year."

6. Along with a letter dated August 18, 2004, the government provided me with three certificates indicating that Mako was trained in narcotics detection in 1996, 1998 and 2000. The letter states, "The Trooper is pursuing certifications for the odd-numbered years, which I will pass on to you upon receipt." I never received copies of any other certifications from the government.

7. As a result of Freedom of Information Act requests I served upon the Massachusetts State Police, it appears that Mako was never trained in currency detection and that no duplicate set of Mako's training and performance records exists.

8. On October 6, 2004, the government formally declined to produce Trooper Reid's training evaluations as Mako's handler because "[t]his information is contained in Trooper Reid's personnel file."

9. On October 12, 2004, I filed a <u>Motion for Supplemental Discovery</u> that included a request for Trooper Reid's training evaluations as Mako's handler. That motion has yet to be ruled upon by the court.

Signed under the pains and penalties of perjury this 22 day of November, 2004.

_____
Debra A. DelVecchio

-2-

**CERTIFICATE OF SERVICE**
I hereby certify that a true and complete copy of this document was served upon the attorney of record for each party and each appearing pro se, by mail, hand delivery, facsimile, or other service, on 11/22/04

_____