# TAB 4

# SEARCH WARRANT

G.L. c. 276, §§ 1-7

TRIAL COURT OF MASSACHUSETTS
District
Cambridge
_____ COURT DEPARTMENT
_____ DIVISION

SEARCH WARRANT DOCKET NUMBER
0352SW03

**TO THE SHERIFFS OF OUR SEVERAL COUNTIES OR THEIR DEPUTIES, ANY STATE POLICE OFFICER, OR ANY CONSTABLE OR POLICE OFFICER OF ANY CITY OR TOWN, WITHIN OUR COMMONWEALTH:**

Proof by affidavit, which is hereby incorporated by reference, has been made this day and I find that there is PROBABLE CAUSE to believe that the property described below:

[X] has been stolen, embezzled, or obtained by false pretenses.
[X] is intended for use or has been used as the means of committing a crime.
[X] has been concealed to prevent a crime from being discovered.
[X] is unlawfully possessed or concealed for an unlawful purpose.
[X] is evidence of a crime or is evidence of criminal activity.
[ ] other (specify) _____

**YOU ARE THEREFORE COMMANDED** within a reasonable time and in no event later than seven days from the issuance of this search warrant to search for the following property:

Controlled Substances as defined in C94c, U.S currency and/or any other proceeds related to the distribution of controlled substances.

Federal Express cardboard boxes, (1) large 13"X18"X3"D  (2) 12"X13"X3" D

[X] at:

1998 Ford F15  VIN# 1FTZF18W9WNB85858  color white

which is occupied by and/or in the possession of: Gary Dean Newell    DOB 07-06-1951

[ ] on the person or in the possession of: _____

You [ ] are [X] are not also authorized to conduct the search at any time during the night.

You [ ] are [X] are not also authorized to enter the premises without announcement.

You [ ] are [X] are not also commanded to search any person present who may be found to have such property in his or her possession or under his or her control or to whom such property may have been delivered.

**YOU ARE FURTHER COMMANDED** if you find such property or any part thereof, to bring it, and when appropriate, the persons in whose possession it is found before the
Cambridge Division of the District Court Department.

DATE ISSUED: January 24, 2003

SIGNATURE OR JUSTICE, CLERK-MAGISTRATE OR ASSISTANT CLERK
X _____

FIRST OR ADMINISTRATIVE JUSTICE
WITNESS: Roanne Sragow

PRINTED NAME OF JUSTICE, CLERK-MAGISTRATE OR ASSISTANT CLERK
Robert A. _____

DEFENDANT'S EXHIBIT 4

SW-1 (7/89)

# RETURN OF OFFICER SERVING SEARCH WARRANT

A search warrant must be executed as soon as reasonably possible after its issuance, and in any case may not be validly executed more than 7 days after its issuance. The executing officer must file his or her return with the court named in the warrant within 7 days after the warrant is issued. G.L. c. 276, §3A.

This search warrant was issued on JANUARY 24, 2003, and I have executed it as follows:

The following is an inventory of the property taken pursuant to this search warrant:

1. $221,910.00 US currency
2. 1998 Ford F15 Truck VIN # 1FTZF18W9WNB85858
3. (2) Fed Express Boxes
4. Cooler
5. (2) Tarps
6. Clothing
7. Skis & ski boots
8. Tan canvas type duffle bag
9. White plastic shopping bags
10. Registration to 1998 Ford Truck
11.
12.
13.
14.
15.
16.
17.
18.
19.
20.

(attach additional pages as necessary)

This inventory was made in the presence of: S/A Brian Tomasetta

I swear that this Inventory is a true and detailed account of all the property taken by me on this search warrant.

| SIGNATURE OF PERSON MAKING SEARCH | DATE AND TIME OF SEARCH | SWORN AND SUBSCRIBED TO BEFORE |
|---|---|---|
| X Stephen K Edwards | 01-24-2003  11:05 pm | X [signature] Signature of Justice, Clerk-Magistrate or Assistant Clerk |
| PRINTED NAME OF PERSON MAKING SEARCH: STEPHEN K EDWARDS | TITLE OF PERSON MAKING SEARCH: Police Officer | DATE SWORN AND SUBSCRIBED TO: 1-31-03 |

G.L. c. 276, §§ 1-7

TRIAL COURT OF MASSACHUSETTS
District Court Department

| NAME OF APPLICANT | |
|---|---|
| Stephen K. Edwards | Cambridge DIVISION |
| POSITION OF APPLICANT Police Officer | SEARCH WARRANT DOCKET NUMBER 0352S203 |

I, the undersigned **APPLICANT**, being duly sworn, depose and say that:

1. I have the following information based upon the attached affidavit(s), consisting of a total of _____ pages, which is (are) incorporated herein by reference.

2. Based upon this information, there is **PROBABLE CAUSE** to believe that the property described below:

   [X] has been stolen, embezzled, or obtained by false pretenses.
   [X] is intended for use or has been used as the means of committing a crime.
   [X] has been concealed to prevent a crime from being discovered.
   [X] is unlawfully possessed or concealed for an unlawful purpose.
   [X] is evidence of a crime or is evidence of criminal activity.
   [ ] other (specify) _____

3. I am seeking the issuance of a warrant to search for the following property (describe the property to be searched for as particularly as possible):

   Controlled Substances as defined in C94c, U.S currency and/or any other proce[eds] related to the distribution of controlled substances.
   Federal Express cardboard boxes, (1) large 13"X18"X3"D   (2) 12" X 13"X3" D

4. Based upon this information, there is also probable cause to believe that the property may be found (check as many as apply):
   [X] at (identify the exact location or description of the place(s) to be searched):

   1998 Ford F15   VIN# 1FTZF18W9WNB85858   color white

   which is occupied by and/or in the possession of: Gary Dean Newell   DOB 07-06-1951

   [ ] on the person or in the possession of (identify any specific person(s) to be searched):

   [ ] on any person present who may be found to have such property in his or her possession or under his or her control or to whom such property may have been delivered.

**THEREFORE**, I respectfully request that the court issue a Warrant and order of seizure, authorizing the search of the above described place(s) and person(s), if any, to be searched, and directing that such property or evidence or any part thereof, if found, be seized and brought before the court, together with such other and further relief that the court may deem proper.

[ ] have previously submitted the same application.
[ ] have not previously submitted the same application.

| PRINTED NAME OF APPLICANT | SIGNED UNDER THE PENALTIES OF PERJURY |
|---|---|
| Stephen K. Edwards | X Stephen K. Edwards — Signature of Applicant |
| SWORN AND SUBSCRIBED TO BEFORE X _____ Signature of Justice, Clerk-Magistrate or Assistant Clerk | 1/24/03 DATE |

SW-1 (7/89)

DEFENDANT'S EXHIBIT B

January 24, 2003

**Affidavit in Support of a Search Warrant**

I Stephen K. Edwards depose and state:

I am a member of the Cambridge Police Department. I have been a police officer for seventeen years. I have been assigned to the Special Investigations Unit for approximately fifteen years. My duties and responsibilities include the enforcement of narcotic related offenses. I have received specialized training in the field of narcotics enforcement. During the course of my career, I have made numerous arrests. I have been the affiant of over one dozen search warrants. I have also worked in an undercover capacity and made over one dozen purchases of controlled substances. I have participated in the execution of numerous search warrants.

On January 24, 2003, at approximately 1015 hours, Cambridge Police Detective Stephen Edwards was on Monsignor O'Brien Highway at the entrance of the Twin City Mall in Cambridge. At this time, this officer made observation of a white Ford pick-up truck bearing Oregon registration WHZ214. The operator of this vehicle was observed to pass through a red traffic signal with out coming to a stop. As a result of making this observation, this officer requested the assistance of a marked cruiser to stop this vehicle.

Cambridge Patrolmen David Diamond and James Ruffing responded to assist. Once Officers had this vehicle stopped, they requested the operator produce his license and registration. The driver produced an Oregon drivers license identifying himself as Gary Dean NEWELL, DOB 07/06/51, of 34637 Devonshire Drive, Eugene, Oregon. This operator supplied documents stating his ownership of the vehicle. Detective Reynolds then joined officers at the stop and walked up to the truck and observed through the rear window of the cap several items strewn about the bed of the truck. Included within these items were a pair of skis, a cooler, a toolbox, and a large white plastic bag containing two Fed-Ex boxes. This officer made no note of any suitcase or cold weather clothing that would be consistent with one who is travelling across country.

This officer then had an opportunity to speak with Mr. Newell. This officer inquired as to where Mr. Newell was staying in the area. NEWELL replied that he was staying at the Holiday Inn Express and that he had already checked out. A

ROBERT L. MOSCOW
Clerk-Magistrate

1

few moments later, NEWELL contradicted himself and stated that he has to go back to this hotel. NEWELL stated to this officer that NEWELL had paid his bill but still had to go back to the hotel room. This officer inquired of Mr. Newell as to the purpose of his trip. Mr. Newell responded that he was going skiing in the White Mountains.

In speaking with Mr. Newell, this officer found him to be nervous. As they spoke, Mr. Newell was observed to be looking all around. This officer made further observation of Mr. Newell each time this officer looked in the rear of the truck bed. On each occasion, Mr. Newell was found to be looking in the same direction then was observed to look toward the sky. Each time he was asked a question, Mr. Newell would hesitate prior to responding. Based upon Mr. Newell's overall demeanor, I found him to be nervous.

A criminal check was conducted by means of the computer on Mr. Newell and as a result it was learned that he has an adult record dating back to 1977. Included within these offenses are past convictions for narcotics violations.

This officer explained to Mr. Newell that because Mr. Newell was extremely nervous and that things were not flowing very well, Investigators believed that there is a possibility of contraband in the Federal Express packages and/or the vehicle. Based upon Mr. Newell's nervousness and inconsistent statements, this officer asked Mr. Newell if he would allow this Officer to look into the vehicle. Mr. Newell replied to this officer, "Yeah jump in the back if you want to". This officer began a check of this vehicle's contents and as I came to the white plastic bag containing the two Fed-Ex boxes, this officer inquired of Newell as to what was in the Federal Express containers. Mr. Newell replied that these containers were presents for his girlfriend. Mr. Newell was asked by this Officer for permission to look in the Federal Express packages, Mr. Newell replied, "no".

As a result of the facts and circumstances surrounding this motor vehicle stop, this officer informed Mr. Newell that we had concerns and wished to have the vehicle checked by a dog. This officer then asked Mr. Newell a second time about the contents of the Fed-Ex packages. Mr. Newell responded, "We're just gonna have to wait for your guy". Officers then requested the assistance of a canine trained in the detection of narcotics odor.

ROBERT L. MOSCOW
Clerk-Magistrate

2

Trooper Mark Reid of the Massachusetts State Police and K-9 Mako arrived on scene. Trooper Reid has been a member of the state police for over ten years. He has been assigned to the K-9 Unit for over seven years. Since being assigned to the K-9 Unit, Trooper Reid has been the assigned as the handler of K-9 Mako. K-9 Mako is a nine year old German Shepherd. During 1996, Trooper Reid and K-9 Mako participated an extensive certification program which included some two hundred and fifty hours of classroom and practical training for the detection of narcotic odors. This course of instruction was directed by the Connecticut State Police. As a result of successfully completing this course of instruction, K-9 Mako received his certification from NESPAC. Since receiving this certification, Trooper Reid and K-9 Mako have undergone an annual re-certification which is conducted by the New Hampshire State Police. Additionally, Trooper Reid and K-9 Mako are required to participate in routine weekly practical training sessions. According to the records maintained by Trooper Reid, K-9 Mako has participated in over eighteen hundred narcotics searches. Of these actual searches K-9 Mako has detected the presence of narcotic odor and has made in excess of three hundred and fifty positive finds. These finds have resulted in the seizure of heroin, cocaine and marijuana. Trooper Reid indicates that K-9 Mako has made positive indications for the presence of narcotics odor and located currency in over thirty occasions.

Once Trooper Reid arrived on scene he introduced K-9 Mako to the exterior of this white Ford pickup. As the dog completed a check of the vehicle's exterior he was introduced to the cab area of this vehicle. After completing the interior, the dog was led to the rear of the vehicle where he jumped onto the rear bed. As Trooper Reid stood at the rear of this truck he noted a strong odor of oranges. At the time this search was conducted, Trooper Reid also noted that it was extremely cold with a moderate wind blowing into the rear of this truck bed. After K-9 Mako walked through the rear of this truck's bed, Trooper Reid moved the items at the rear of the bed forward, that were exposed to the wind. After doing this, K-9 Mako made a second check of the rear of the truck and was observed to have an aggressive reaction while working in the area of the white plastic bag containing the two Fed-Ex boxes. While scratching and biting at these boxes, K-9 Mako's tooth tore into the box and ripped open a small hole. Upon examining the hole in this box, officers noted that this Fed-Ex box contained U.S. currency. Trooper Reid indicates that this change in behavior is a positive response for the presence of narcotics odor.

ROBERT L. MOSCOW
Clerk-Magistrate

3

The method by which this currency is packaged is significant to this investigation because it is consistent with this officer's training an experience of the manner that those involved in the distribution of controlled substances traditionally transport the proceeds of the illegal drug trade.

After observing the contents of this box this officer inquired of Mr. Newell as to the box's contents. Mr. Newell declined to comment, and stared back at this officer with a blank stare. This officer then explained to Mr. Newell our concerns about this money and that it was to be secured pending further investigation. This officer also informed Mr. Newell at this time that we would be securing his vehicle pending this investigation. He was further informed of my intentions of seeking a search warrant. Mr. Newell was advised that he was free to go.

*Detective Stephen K. Edwards*
Cambridge Police Department

*Assistant Clerk Magistrate*
Cambridge District Court

4