UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
UNITED STATES OF AMERICA      )
                              )     No. 03-10370-3-DPW
        v.                    )
                              )
GARY NEWELL,                  )
                              )
        Defendant.            )
```

<u>GOVERNMENT'S OPPOSITION TO GARY NEWELL'S MOTION TO SEVER</u>

The United States of America, by and through its attorneys Michael J. Sullivan, United States Attorney for the District of Massachusetts, and Assistant U.S. Attorney Rachel E. Hershfang, hereby opposes Gary Newell's ("Newell") motion for severance.

As with a similar motion filed by codefendant John Graham, the severance Newell seeks is not supported by the evidence or the law. Newell is one of eight remaining defendants charged with participating in a conspiracy to possess with intent to distribute marijuana. The witnesses and proof with respect to all Count One defendants are intermingled, and severing Newell's case from those of the other seven defendants would result in unnecessary duplication of trial time, witnesses, and effort.

For the reasons set forth below, the government opposes the motion for severance currently before the Court.

**<u>FACTS</u>**

The moving defendant is one of nine indicted in a six-count

Superseding Indictment.[1]  The Indictment resulted from an investigation by the Drug Enforcement Administration ("DEA") into a Boston- and Brookline-based marijuana trafficking organization. The investigation, which culminated in a wiretap, hit its stride with the seizure of approximately $221,000 from Gary Newell on January 24, 2003.

As the complaint affidavit makes clear, Count One charges a group of distributors, buyers, and sellers who worked together to distribute marijuana throughout the greater Boston area.  The group was comprised of two bulk marijuana distributors (Douglas Bannerman and Kurt Walter), as well as a number of retail-level distributors.  Newell was not in either of these categories, but rather was a driver whose responsibility was to deliver bulk loads of marijuana to the Boston area and to return the cash payments to the marijuana sources.  As described in the complaint affidavit, Newell was the object of a DEA "wall-off" stop on January 24, 2003.  Based on timely trap and trace information and subpoena responses, on that morning, DEA identified Newell's Ford F-150 truck in the parking lot of a Holiday Inn Express on Monsignor O'Brien Highway in Cambridge.  With the assistance of the Cambridge Police and the Massachusetts State Police, DEA followed the truck, stopped it, and developed probable cause to

---

[1]Codefendant Scott Myers has already tendered a guilty plea; codefendant Daniel MacAuley has been scheduled to do so.

search the truck and its contents, resulting in the seizure of more than $200,000.

Further investigation revealed that Newell had stayed at the Holiday Inn Express for each of the preceding three months; tolls for Newell's cellular telephone showed contact with the Holiday Inn Express, presumably in connection with one of those stays, in October, 2003. Although Newell was not intercepted on the wiretap, many of the cooperating witnesses who will be called at the trial of Bannerman and the others are expected to testify to matters that are relevant to the case against Newell. For example, the person identified in the Title III affidavits and complaint affidavit as "CW-2" is expected to testify that Bannerman's group liked to use Ford pickup trucks to transport its marijuana. The person identified as "CW-6" will testify that he learned during the course of the conspiracy that one of Bannerman's drivers who worked for the Robert Cray Band [Newell's employers] was in trouble -- presumably a reference to the money seizure described above.

### ARGUMENT:

### The Defendants Named in the Indictment are Properly Joined Under Fed. R. Crim. P. 14 and Should be Tried Together.

### A.    The Law Favors Joint Trials for Coconspirators.

Coconspirators should be tried together. See Zafiro v. United States, 506 U.S. 534, 537 (1993). Under Fed. R. Crim. P. 14, "the court may grant a severance of defendants" if the

joinder, proper under Rule 8(a), nonetheless prejudices a defendant.  However, for reasons of judicial economy, consistency, and coherence, coconspirators should ordinarily be tried together, and the federal system prefers joint trials of defendants who are indicted together.  Joint trials "play a vital role in the criminal justice system."  Zafiro, 506 U.S. 534, 537 (1993), quoting Richardson v. Marsh, 481 U.S. 200, 209 (1987).

In the First Circuit, the general rule is that "those who are indicted together should be tried together."  United States v. DeLeon, 187 F.3d 60, 63 (1st Cir. 1999) (citation omitted).  Severance therefore should be granted only if a defendant can "demonstrate prejudice so pervasive that it would be likely to effect a miscarriage of justice" to try him with his codefendants.  DeLeon, 187 F.3d at 63 (citations omitted); see also United States v. LiCausi, 167 F.3d 36, 49 (1st Cir. 1999).  To satisfy this standard, a defendant must do more than establish that he might have a better chance of acquittal in a separate trial.  Id. (citation omitted).  The First Circuit warns defendants seeking severance that this is "a difficult battle for a defendant to win."  Id. (citation omitted).  As the First Circuit has stated:

> When several defendants are named in a unified indictment, there is a strong presumption that they should be tried together. [citations omitted].  To obtain a severance under such circumstances, a defendant must demonstrate extreme prejudice, such as by showing a 'serious risk that a

-4-

> joint trial would compromise a specific trial
> right,' or would 'prevent the jury from
> making a reliable judgment about guilt or
> innocence.'

United States v. Houlihan, 92 F.3d 1271, 1295 (1st Cir. 1996),

quoting Zafiro, 506 U.S. at 538-39; United States v. O'Bryant,

998 F.2d 21, 25 (1st Cir. 1993).  In short, it is not common, and

should not be easy, for a defendant, particularly a defendant in

a conspiracy case, to win severance.  E.g., United States v.

Brandon, 17 F.3d 409, 440 (1st Cir. 1994) ("In the context of

conspiracy, severance will rarely, if ever, be required.")

(citation omitted).

Putting aside the claims related to difficulties in

procuring his anticipated expert for the suppression hearing,[2]

Newell claims that he is a relatively minor player, who had a

limited role in the conspiracy, and that the risk of potential

negative "spillover" effect would not only compromise his trial

rights, but would prevent the jury from making a reliable

judgment about his guilt or innocence.  Therefore, he argues, he

should be tried alone.

As when Graham made it, this argument is not persuasive.

Some measure of prejudice always inheres to a defendant who is

tried jointly with codefendants.  See  United States v. DeLuca,

---

[2]Because the Court has ruled that the hearings will go
forward, with further arrangements to be made in connection with
the defense expert, these arguments are moot.

137 F.3d 24, 36 (1st Cir. 1998)("a measure of evidentiary spillover is a foreseeable concomitant of virtually every joint trial, yet seldom indicates undue prejudice") (citation omitted). But such "garden variety prejudice" alone will not suffice to support a motion to sever. United States v. Boylan, 898 F.2d 230, 246 (1st Cir. 1990) (citations omitted).

Newell's argument that the "evidentiary disparity" between the case against him and against his codefendants may result in the jury's finding him guilty by association. The opposite is equally likely to be true -- faced with some defendants whose guilt appears to be overwhelming, and one whose guilt is based on limited evidence, a jury might see fit to acquit the lesser player. In short, disparity in evidence admissible against different codefendants, alone, is not a sufficient basis for severance. See, e.g., United States v. Levy-Cordero, 67 F.3d 1002, 1007 (1st Cir. 1995)(denial of severance appropriate because no evidence of "spillover" merely because "minnow" stands trial with "kingfish"). Any possible prejudice can be avoided by instructions specifying that jurors are to consider separately the charges against each defendant. E.g., DeLeon, 187 F.3d at 64 (noting, in affirming denial of severance, that limiting instructions had jury consider charges and evidence against defendants individually).

Newell was properly joined in the indictment with the other defendants and should remain joined for trial.  Based on the seizure of over $200,000, as well as hotel and telephone records and cooperator information, the government's evidence is that Newell, on many occasions, delivered bulk marijuana to the Boston area for distribution by Bannerman and others.  The evidence of Newell's criminal activity is intertwined with the evidence of Bannerman's criminal activity, and parallels evidence of other, later, drivers' criminal activity.  Each defendant's role can be assessed by the jury.  The defendant has not made a showing of prejudice sufficient to overcome the strong preference for joint trial of codefendants.

**B.    Judicial Economy Mandates a Joint Trial Because of Significant Overlap in Evidence Against Each Defendant.**

Judicial economy strongly weighs against severance.  The six-count indictment in this case alleges a conspiracy involving eight (remaining) defendants.  As outlined above, and as more fully described in the affidavit, there is significant overlap in the evidence against the various members of the conspiracy.  Separate trials would result in the unnecessary duplication of witnesses and exhibits and cause the government to put on a substantial part of its case twice, or more, thus defeating the clear benefits of a joint trial.  See United States v. Magana, 127 F.3d 1, 7 (1st Cir. 1997) ("There are obvious advantages in

judicial economy to the joint trial of defendants accused of the joint commission of crimes.") (citations omitted).  Newell's unsubstantiated claims of prejudicial spillover do not warrant the expense and inconvenience that would result from trying the same case multiple times.

C.  **Any Prejudice Could Be Cured by Instruction**

Finally, although there would be no harm in trying the defendant jointly with his codefendants, any <u>potential</u> prejudice arising from a joint trial could be cured by a limiting instruction to the jury that there must be sufficient proof against each individual defendant, and that such proof must be considered independently.  Indeed, such an instruction is fairly mandated in a multi-defendant trial such as this one.  It is well settled that juries are presumed to follow the court's instructions.  <u>See</u> <u>e.g.</u>, <u>United States v. Olano</u>, 507 U.S. 725, 741 (1993); <u>United States v. Rullan-Rivera</u>, 60 F.3d 16, 19-20 (1st Cir. 1995); <u>cf.</u> <u>United States v. Guyon</u>, 27 F.3d 723, 729 (1st Cir. 1994)(limiting instructions "cushion[] the impact and reduce[] any possible prejudice").  Thus, appropriate limiting instructions explaining that each defendant must be considered separately will eliminate any perceived prejudice.

<u>CONCLUSION</u>

Based on the facts and argument set forth above and filed herewith, as well as any presented at a hearing on this matter,

-8-

the government submits that Newell's motion to sever should be denied.

                              Respectfully submitted,

                              MICHAEL J. SULLIVAN
                              United States Attorney

                    By:
                              /s/ Rachel E. Hershfang
                              RACHEL E. HERSHFANG
                              Assistant U.S. Attorney

Dated: July 25, 2005